**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| BMO Bank N.A. | ) | |
| Plaintiff | ) | Case No. |
| v. | ) | |
| 9227-1741 Quebec Inc.; | ) | |
| Trivel Inc. | ) | |
| Defendants | ) | |

## <u>COMPLAINT</u>

NOW COMES Plaintiff BMO Bank N.A. by and through its attorneys Egan & Alaily LLC, and for its Complaint (French translation attached as Exhibit 1) against the above-named Defendants states as follows:

## I.    PARTIES

1.      Plaintiff BMO Bank N.A. ("BMO") is a national banking association with its principal place of business located in Chicago, Illinois.

2.      Defendant 9227-1741 Quebec Inc. ("Quebec Inc.") is a Canadian corporation with its principal place of business in Repentigny, Quebec, Canada.

3.      Defendant Trivel Inc. is a Canadian corporation with its principal place of business in Repentigny, Quebec, Canada, that engages in the manufacturing, distribution, and sales of bikes across Canada and the United States.

4.      Diversity jurisdiction is present because the Plaintiff and Defendants are not citizens of the same state, and the amount at issue exceeds $75,000.00.

5.      Olivier Lajoie is the President and officer of both Quebec Inc. and Trivel Inc.

6.      Stephane Morin is the Controller and officer of both Quebec Inc. and Trivel Inc.

## II.    FACTS

7.      On or about September 4, 2024, Quebec Inc., by its President Olivier Lajoie, met with BMO representatives for the purpose of opening a deposit account that could be used in the United States. Knowing that BMO's U.S headquarters were in Chicago and that the account would be managed by U.S. operations based out of Chicago, Quebec Inc. completed the necessary paperwork required by BMO.

8.      On September 17, 2024, an account was opened for Quebec Inc.  It was a prepaid account that required funds to be available in order for the accountholder to debit payments.

9.      At all times relevant the Quebec Inc. deposit account was governed by a Commercial Account Agreement ("CAA").  The CAA sets forth the duties and obligations of the accountholder.  (A copy of the Commercial Account Agreement is attached hereto as Exhibit A).

10.     On November 25, 2024, Quebec Inc.'s account had $150.00 available.

11.     On that day, Trivel Inc. was obligated to make two payments to the U.S. Customs and Border Patrol in the amount of $185,645.50 and $185,253.09 (all amounts in United States dollars).

12.     On November 25, 2024, Stephane Morin, in his capacity as Controller and officer of Trivel Inc., with the knowledge of Olivier Lajoie, instigated two debits from the Quebec Inc. account to the U.S. Customs and Border Patrol in the amounts of $185,645.50 and $185,253.09, for the benefit of Trivel Inc.  Morin and Lajoie had knowledge that the Quebec Inc. account had only $150.00.

13.     Notwithstanding that the Quebec Inc. account had insufficient funds, the two debits were processed because Morin, in his capacity as Controller and officer of Trivel Inc., manually approved that the funds be debited.

14.     On November 26, 2024, BMO was made aware that the Quebec Inc. account was overdrawn in the amount of $370,748.59 (referred to as the "overdraft").  BMO advised Quebec Inc. that the overdraft was a breach of the CAA and made demand upon Quebec Inc. to cure the breach.

15.     To date, the Quebec Inc. account remains overdrawn in the amount of $370,748.59.

### III.     CAUSES OF ACTION

#### Count I – Breach of Commercial Account Agreement (against 9227-1741 Quebec Inc.)

16.      BMO re-states and re-alleges Par. 1-15 as if fully set forth herein.

17.     The CAA is a contract between BMO and Quebec Inc., memorializing the parties' rights, duties, and obligations regarding the subject deposit account.

18.     BMO performed its obligations under the CAA by, among other things, establishing the deposit account for Quebec Inc.'s intended purpose.

19.     Quebec Inc. breached the CAA by allowing the overdraft to occur and further by not immediately repaying the overdraft.  (*See* CAA, Page 6, Par. 17).

20.     Per Par. 17 of the CAA, Quebec Inc. is liable for the amount of the overdraft.

21.     As a result of Quebec Inc.'s breach of the CAA, BMO has been damaged in the amount of the overdraft that remains unpaid, which is $370,748.59 plus attorney's fees, costs, and other charges for which Quebec Inc. is liable.

WHEREFORE, Plaintiff BMO Bank N.A. requests judgment in its favor against 9227-1741 Quebec Inc. in the amount of $370,748.59 plus all attorney's fees, costs, and other charges recoverable under the CAA, and for any other just relief.

### Count II – Tortious Interference with Contract (against Trivel Inc.)

22.     BMO re-states and re-alleges Par. 1-15 as if fully set forth herein.

23.     BMO and Quebec Inc. entered into a valid contract (the CAA).

24.     Trivel Inc. knew of the CAA between BMO and Quebec Inc.

25.     Trivel Inc. intentionally and unjustifiably induced Quebec Inc. to breach the CAA.

26.     Trivel's wrongful conduct caused Quebec Inc. to breach the CAA.

27.     BMO has suffered damages as a result of Quebec Inc.'s breach of the CAA.

WHEREFORE, Plaintiff BMO Bank N.A. requests judgment in its favor against Trivel Inc. in the amount of $370,748.59 and for any other just relief.

BMO Bank N.A.

By:

_____/s/ Adham Alaily_____.

Attorney at Law

**Egan & Alaily LLC**
20 S. Clark Street, Suite 2120
Chicago, Illinois 60603
(312) 253-8640
clerk@EA-atty.com